**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL PAPER COMPANY, | ) | |
| | ) | Civil Action No. 1:18-cv-01229 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGIA PACIFIC CONSUMER PRODUCTS, | ) | |
| FORT JAMES CORPORATION, GEORGIA- | ) | |
| PACIFIC LLC, NCR CORPORATION, | ) | |
| and WEYERHAEUSER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| WEYERHAEUSER COMPANY, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| | ) | |
| Counterdefendant. | ) | |
| | ) | |
| WEYERHAEUSER COMPANY, | ) | |
| | ) | |
| Crossclaimant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGIA-PACIFIC CONSUMER PRODUCTS, | ) | |
| FORT JAMES CORPORATION, GEORGIA- | ) | |
| PACIFIC LLC, and NCR CORPORATION, | ) | |
| | ) | |
| Crossdefendants. | ) | |

**DEFENDANT WEYERHAEUSER COMPANY'S ANSWER, AFFIRMATIVE DEFENSES,
COUNTERCLAIMS, AND CROSSCLAIMS**

Weyerhaeuser Company ("Weyerhaeuser"), by and through its undersigned counsel, files

this Answer to the Complaint of International Paper Company ("International Paper") for the

following reasons:

## INTRODUCTION

1.      This case arises from the same transaction or occurrence as a prior case litigated in
this Court:  *Georgia-Pacific Consumer Products LP, et al. v. NCR Corporation, et al.*, Case
Number 1:11-cv-00483-RJJ ("*GP v. NCR*").

**Answer:**      Weyerhaeuser admits that International Paper purports to bring a civil action

arising from the same transaction or occurrence as a prior litigated case, *Georgia-Pacific*

*Consumer Products LP, et al. v. NCR Corporation, et al.*, Case Number 1:11-cv-00483-RJJ ("*GP*

*v. NCR*").  Weyerhaeuser denies any remaining allegations set forth in Paragraph 1.

2.      International Paper brings this action to recover costs of response and for other
relief under the Comprehensive Environmental Response, Compensation and Liability Act, as
amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et
seq*. ("CERCLA"), also known as Superfund.

**Answer:**      Weyerhaeuser admits that International Paper purports to bring an action to

recover costs of response and for other relief under the Comprehensive Environmental Response,

Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization

Act of 1986, 42 U.S.C. § 9601 *et seq*. ("CERCLA"), also known as Superfund.  Weyerhaeuser

denies any remaining allegations set forth in Paragraph 2.

3.      Although this case is related to *GP v. NCR*, International Paper brings this action
under CERCLA to pursue cost-recovery and contribution claims for costs that International Paper
incurred and will continue to incur responding to releases and threats of releases of hazardous
substances at the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site ("Kalamazoo
River Superfund Site" or "the Site") *after* the 2015 allocation-phase trial in *GP v. NCR*.

**Answer:**      Weyerhaeuser admits that International Paper purports to bring this action

under CERCLA to pursue cost-recovery and contribution claims for costs that International Paper

purports that it has incurred and will continue to incur responding to releases and threats of

releases of hazardous substances at the Allied Paper Inc./Portage Creek/Kalamazoo River

Superfund Site ("Kalamazoo River Superfund Site" or "the Site") after the 2015 allocation-phase

trial in *GP v. NCR*.  Weyerhaeuser denies any remaining allegations set forth in Paragraph 3.

4.     International Paper brings these claims now to ensure that they are filed within any applicable statute of limitations under CERCLA, to the extent the claims may not be deemed to be within the scope of the claim addressed in *GP v. NCR*.

**Answer:**     Weyerhaeuser admits that International Paper purports to bring the claims in

the Complaint now to ensure that they are filed within any applicable statute of limitations.

Weyerhaeuser denies any remaining allegations set forth in Paragraph 4.

## BACKGROUND

5.     The Site is contaminated with polychlorinated biphenyls, better known as PCBs. PCBs are a hazardous substance.  The primary PCB contaminant at issue at the Kalamazoo River Superfund Site is known as Aroclor 1242.

**Answer:**     Admitted.

6.     Through at least 1971, PCBs were released into the Kalamazoo River through the discharge and disposal of PCB-contaminated solids and paper residuals by certain paper de-inking and recycling companies.

**Answer:**     Weyerhaeuser admits that some PCBs were released into the Kalamazoo

River by certain companies and is without knowledge or information sufficient to form a belief

regarding the truth of the remaining allegations set forth in Paragraph 6.

7.     PCBs were released into the Kalamazoo River because waste paper that was deinked and/or recycled by companies near the Kalamazoo River included PCB-laden "broke" and "trim."  Such broke and trim were wastes that resulted from the manufacture of proprietary, PCB-coated "carbonless copy paper" ("CCP") pioneered by Defendant NCR Corporation.  During this period, paper de-inking and recycling companies did not know that the CCP broke and trim contained PCBs.

**Answer:**     The allegations set forth in Paragraph 7 concern parties other than

Weyerhaeuser, and therefore no response is required.  To the extent a response is required,

Weyerhaeuser is without knowledge or information sufficient to form a belief regarding the truth

of the allegations set forth in Paragraph 7.

     8.     Contamination from the PCB-laden broke and trim has made large segments of the Kalamazoo River an "NCR river."  As the Court concluded in *GP v. NCR*, NCR CCP is the primary source of PCB-contaminated sediments that require remediation at the Kalamazoo River Superfund Site.

     **Answer:**     The allegations set forth in Paragraph 8 concern parties other than

Weyerhaeuser, and therefore no response is required.

     9.     If not for NCR's use of PCBs in its CCP, and if not for the contamination of the Kalamazoo River by PCB Aroclor 1242 attributable to NCR broke and trim, the Kalamazoo River would not have been listed as a Superfund site.

     **Answer:**     The allegations set forth in Paragraph 9 concern parties other than

Weyerhaeuser, and therefore no response is required.


## JURISDICTION AND VENUE

     10.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 9607 and 9613(b), providing jurisdiction over controversies arising under CERCLA; 28 U.S.C. § 1331 providing jurisdiction over federal questions; and 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 9613(g)(2), providing jurisdiction over declaratory judgment actions.

     **Answer:**     Admitted.

     11.     Venue is proper under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 9613(b), because the events giving rise to the claims asserted in this Complaint are based on paper processing and other related activities that took place in this District and resulted in the release of PCBs into portions of the Kalamazoo River located in this District.

     **Answer:**     Admitted.

     12.     Venue is also proper pursuant to 28 U.S.C. § 1391(c), as each Defendant is subject to personal jurisdiction in this District.

**Answer:**      To the extent that the allegations in Paragraph 12 concern parties other than

Weyerhaeuser, no response is required.  Weyerhaeuser admits that Weyerhaeuser is subject to

personal jurisdiction in this District.

13.      Pursuant to 42 U.S.C. § 9601(l), International Paper will provide a copy of this
Complaint to the Attorney General of the United States and to the Administrator of the United
States Environmental Protection Agency.

**Answer:**      The allegations set forth in Paragraph 13 concern parties other than

Weyerhaeuser, and therefore no response is required.

## PARTIES

### The Defendants

14.      GP is the corporate successor to Kalamazoo-area facilities, including the
Kalamazoo Paper Company mill, that deinked and recycled PCB-containing NCR broke and trim,
which resulted in the discharge of large volumes of PCBs into the Kalamazoo River.

**Answer:**      The allegations set forth in Paragraph 14 concern parties other than

Weyerhaeuser, and therefore no response is required.

15.      GP also owned and operated landfills at the Site, into which it placed dewatered
paper residuals, which also contained PCBs.  Those landfills released PCBs into the Kalamazoo
River.

**Answer:**      The allegations set forth in Paragraph 15 concern parties other than

Weyerhaeuser, and therefore no response is required.

16.      This Court concluded (and GP conceded) in *GP v. NCR* that GP is a responsible
party for Site-related contamination and is thus liable for response costs incurred at the Site.

**Answer:**      The allegations set forth in Paragraph 16 concern parties other than

Weyerhaeuser, and therefore no response is required.

17.      NCR invented the PCB-containing CCP that has caused the PCB contamination of
the Kalamazoo River Superfund Site.  NCR arranged for the disposal of PCB-laden waste,
including from its own CCP converting operations.  NCR also arranged for the disposal of PCB-
laden broke and trim from its "contract coaters," companies that coated NCR's paper according to
NCR's specifications, using an emulsion consigned to them by NCR.  NCR is also the corporate

successor to at least two coaters—the Wisconsin-based Appleton Coated Paper Company ("ACPC"), and Combined Paper Mills, Inc. (also known as the "Combined Locks Mill")—that arranged for the disposal of PCB-laden broke and trim resulting from the coating of NCR CCP. Waste paper from all these activities was recycled at facilities near the Kalamazoo River, with resulting releases of PCBs into the Kalamazoo River.

**Answer:**     The allegations set forth in Paragraph 17 concern parties other than

Weyerhaeuser, and therefore no response is required.

18.     This Court concluded in *GP v. NCR* that NCR is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site. On information and belief, NCR has not funded or performed any work related to the cleanup of the Kalamazoo River Superfund Site.

**Answer:**     The allegations set forth in Paragraph 18 concern parties other than

Weyerhaeuser, and therefore no response is required.

19.     Weyerhaeuser and its predecessor Hamilton Paper Company (collectively, "Weyerhaeuser") disposed of PCBs into the Kalamazoo River owned and operated a landfill which contained PCBs that were released into the Kalamazoo River and otherwise engaged in continued disposal practices that resulted in the release of PCBs into the Kalamazoo River Superfund Site.

**Answer:**     Weyerhaeuser denies the allegations set forth in Paragraph 19 except that

Weyerhaeuser admits, for purposes of the *GP v. NCR* litigation, that it did not contest (1) that it is

an owner and operator of a facility at the Site within the meaning of section 101 (20)(A) of

CERCLA, 42 U.S.C. § 9601 (20)(A); and (2) that there has been a release or threatened release of

PCBs, a hazardous substance, within the meaning of sections 101(14), (22) of CERCLA, 42

U.S.C. §§ 9601 (14), (22), from its facility to a portion of the Site. Weyerhaeuser does not waive

its right to contest claims, including regarding the divisibility of injuries and damages in

connection with the Site or the equitable allocation of response costs.

20.     This Court concluded (and Weyerhaeuser stipulated) in *GP v. NCR* that Weyerhaeuser is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site.

**Answer:** Weyerhaeuser admits that the Court in *GP v. NCR* concluded that Weyerhaeuser is a responsible party under CERCLA and responsible for a portion of the costs allocated in *GP v. NCR*. Weyerhaeuser admits, for purposes of the *GP v. NCR* litigation, that Weyerhaeuser did not contest (1) that it is an owner and operator of a facility at the Site within the meaning of section 101 (20)(A) of CERCLA, 42 U.S.C. § 9601 (20)(A); and (2) that there has been a release or threatened release of PCBs, a hazardous substance, within the meaning of sections 101(14), (22) of CERCLA, 42 U.S.C. §§ 9601 (14), (22), from its facility to a portion of the Site. Weyerhaeuser does not waive its right to contest claims, including regarding the divisibility of injuries and damages in connection with the Site or the equitable allocation of response costs.

**Plaintiff International Paper**

21. International Paper is the corporate successor to St. Regis Paper Company ("St. Regis"). For a period, St. Regis owned and operated the Bryant Mill, a mill that was located in what is now part of the Site.

**Answer:** The allegations set forth in Paragraph 21 concern parties other than Weyerhaeuser, and therefore no response is required.

22. St. Regis purchased the Bryant Mill in 1946 and operated the Bryant Mill until June 30, 1956.

**Answer:** The allegations set forth in Paragraph 22 concern parties other than Weyerhaeuser, and therefore no response is required.

23. In 1956, St. Regis entered into a transaction with the Allied Paper Division of the Thor Corporation ("Allied"). Through that transaction, Allied acquired the business of the Bryant Mill. On July 1, 1956, Allied became the Bryant Mill's operator and, economically and for purposes of 42 U.S.C. § 9601(2)(E)(i), its owner even though Allied did not hold record title to certain of the mill real property ("Mill Property") until 1966, when Allied exercised its option to acquire title to the Mill Property.

**Answer:**       The allegations set forth in Paragraph 23 concern parties other than

Weyerhaeuser, and therefore no response is required.

24.       Between the 1956 transaction and Allied's exercise of its option in 1966, St. Regis continued to hold title to the Mill Property primarily to protect its security interest in the mill.

**Answer:**       The allegations set forth in Paragraph 24 concern parties other than

Weyerhaeuser, and therefore no response is required.

25.       After Allied exercised its option and record title to the Mill Property was transferred to Allied in 1966, St. Regis had no connection to the Bryant Mill.

**Answer:**       The allegations set forth in Paragraph 25 concern parties other than

Weyerhaeuser, and therefore no response is required.

26.       In 1984, St. Regis was acquired by Champion International Corporation ("Champion").  St. Regis was merged into Champion in 1985.

**Answer:**       The allegations set forth in Paragraph 26 concern parties other than

Weyerhaeuser, and therefore no response is required.

27.       In June 2000, International Paper acquired Champion.  On December 31, 2000, Champion was merged into International Paper.

**Answer:**       The allegations set forth in Paragraph 27 concern parties other than

Weyerhaeuser, and therefore no response is required.

28.       In *GP v. NCR*, this Court determined that International Paper is liable for Site-related response costs as the successor to St. Regis, and that St. Regis remained an owner of the Bryant Mill until Allied exercised its option to purchase title to the mill in 1966.  International Paper has appealed the Court's Judgment.  Regardless of whether that appeal succeeds, International Paper intends to pursue its claims, asserted in this action, for response costs that International Paper has incurred at the Site and is continuing to incur.

**Answer:**       The allegations set forth in Paragraph 28 concern parties other than

Weyerhaeuser, and therefore no response is required.

## PRIOR LITIGATION, INCLUDING *GP v. NCR*

29.     The Site has been the subject of prior litigation, including *Kalamazoo River Study Group v. Rockwell International,* Case Number 1:95-cv-838 ("the KRSG Litigation") and *GP v. NCR.*

**Answer:**     Admitted.

30.     The plaintiff in the KRSG Litigation was the Kalamazoo River Study Group ("KRSG"), an unincorporated association that included GP's predecessors Georgia-Pacific Corporation and James River Company, and Weyerhaeuser's predecessor Simpson Plainwell Paper Company.

**Answer:**     Weyerhaeuser denies that Simpson Plainwell Paper Company is a predecessor to Weyerhaeuser but admits the remaining allegations of this paragraph.

31.     Those members of the KRSG, along with a successor of Allied, pursued CERCLA claims through the KRSG against various companies that had operated facilities in and around the Site.  Neither the KRSG nor any of its members pursued any claims against St. Regis, Champion, or International Paper during the KRSG Litigation.

**Answer:**     The allegations set forth in Paragraph 31 concern parties other than Weyerhaeuser, and therefore no response is required.

32.     Over six years after the KRSG Litigation ended, GP filed *GP v. NCR* in which GP asserted CERCLA claims related to the Site against International Paper, NCR, and Weyerhaeuser.

**Answer:**     Admitted.

33.     Chief Judge Robert J. Jonker presided over *GP v. NCR*, including two trials:  a trial addressing the parties' liability, which was held in February 2013 ("Liability Phase Trial"), and a trial addressing the allocation of responsibility for response costs at the Site, which was held from September through December 2015 ("Allocation Trial").

**Answer:**     Admitted.

34.     After the Liability Phase Trial, this Court found all Defendants named in this action and International Paper to be responsible parties under CERCLA.

**Answer:**     Admitted.

35.     After the Allocation Trial, this Court allocated GP's recoverable response costs incurred through August 31, 2014.  The Court held that GP was responsible for 40% of those costs. The Court allocated the remaining 60% of GP's recoverable response costs as follows:  NCR–40%; IP–15%; GP–5%.  Subsequently, a judgment in *GP v. NCR* was entered on June 19, 2018.

**Answer:**     Admitted.

36.     The Court's Judgment in *GP v. NCR* is currently on appeal to the U.S. Court of Appeals for the Sixth Circuit.

**Answer:**     Admitted.

## RELATED-CASE ALLEGATIONS

37.     This case involves the same parties as *GP v. NCR*.

**Answer:**     Admitted.

38.     This case addresses response costs incurred at the same Site as in *GP v. NCR*.

**Answer:**     Admitted.

39.     This case addresses response costs resulting from the same contaminant of concern as alleged in *GP v. NCR*, and from the same contamination-causing activities as alleged in *GP v. NCR*.

**Answer:**     Admitted.

40.     This case thus arises out of the same transaction or occurrence as *GP v. NCR* and is thus a related case to *GP v. NCR* under W.D. Mich. LCivR 3.3.1(d)(iii) and a cognate case to *GP v. NCR* under W.D. Mich. LCivR 3.3.2(c).

**Answer:**     The allegations in Paragraph 40 contain conclusions of law, and therefore no response is required.

## INTERNATIONAL PAPER'S COSTS

41.     Since the *GP v. NCR* Allocation Trial concluded, International Paper has incurred millions of dollars in NCP-compliant response costs for cleanup activities at the Site.  International Paper has incurred these costs pursuant to U.S. Environmental Protection Agency Unilateral Administrative Order, Docket No. V-W-16-C-009, dated April 14, 2016 and U.S. Environmental Protection Agency Unilateral Administrative Order, Docket No. V-W-17-C-002, dated December 16, 2016 (collectively, the "Administrative Orders").  Work that International Paper is obligated to perform pursuant to the terms of the Administrative Orders is ongoing and International Paper is incurring and in the future will incur additional costs pursuant to the Administrative Orders.

**Answer:** Weyerhaeuser is without knowledge or information sufficient to form a belief regarding the truth of the allegations set forth in Paragraph 41.

42. The cleanup of the Site is far from complete as the Administrative Orders only address certain of the work required in connection with the Site.

**Answer:** Weyerhaeuser is without knowledge or information sufficient to form a belief regarding the truth of the allegations set forth in Paragraph 42. To the extent a response is required, Weyerhaeuser states that the Administrative Orders speak for themselves.

43. On appeal, International Paper contests (among other things) the Court's finding in *GP v. NCR* that International Paper is a responsible party with regard to the Site. Regardless of the final disposition of that appeal, International Paper intends to pursue this action.

**Answer:** The allegations in Paragraph 43 concern parties other than Weyerhaeuser, and therefore no response is required.

## FIRST CAUSE OF ACTION

### Claim for Response Costs Against All Defendants under CERCLA Section 107

44. International Paper realleges and incorporates the preceding paragraphs as if fully set forth herein.

**Answer:** Weyerhaeuser incorporates by reference its answers to Paragraphs 1-43.

45. CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), authorizes the recovery of "necessary costs of response consistent with the national contingency plan."

**Answer:** Paragraph 45 asserts legal conclusions to which no response is required.

46. The Kalamazoo River Superfund Site and/or each of the facilities owned and/or operated by GP and Weyerhaeuser or their predecessors within the Site is a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9).

**Answer:** Paragraph 46 asserts legal conclusions to which no response is required.

47. International Paper is a ''person'' as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:** Paragraph 47 asserts legal conclusions to which no response is required.

48.     GP is a ''person'' as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:**     Paragraph 48 asserts legal conclusions to which no response is required.

49.     NCR is a "person" as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:**     Paragraph 49 asserts legal conclusions to which no response is required.

50.     Weyerhaeuser is a ''person'' as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:**     Paragraph 50 asserts legal conclusions to which no response is required.

51.     There was an actual or threatened "release" at and from the facilities referenced above of "hazardous substances" within the meaning of CERCLA sections 101(14) and (22), 44 U.S.C. §§ 9601(14), (22).

**Answer:**     Paragraph 51 asserts legal conclusions to which no response is required.

52.     GP is a person that is or was an owner or operator of facilities referred to above from which there has been a release of hazardous substances within the meaning of CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

**Answer:**     Paragraph 52 asserts legal conclusions to which no response is required.

53.     Weyerhaeuser is or was an owner or operator of facilities referred to above from which there was been a release of hazardous substances within the meaning of CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

**Answer:**     Paragraph 53 asserts legal conclusions to which no response is required.

54.     NCR is a person that by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, at the Site in the form of PCB-containing NCR paper broke and trim, within the meaning of CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)(3).

**Answer:**     Paragraph 54 asserts legal conclusions to which no response is required.

55.     In connection with the releases of PCBs from the facilities located near the Kalamazoo River, and pursuant to the Administrative Orders, International Paper has incurred and will incur "response costs" within the meaning of CERCLA section 101 (25), 42 U.S.C. § 9601(25).  These "response costs" were, and will be, necessary and consistent with the National Contingency Plan pursuant to CERCLA section 105(a), 42 U.S.C. § 9605(a).

**Answer:**     Paragraph 55 asserts legal conclusions to which no response is required.

56.     Defendants are liable, pursuant to section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), to International Paper for past and future Kalamazoo River Superfund Site response costs incurred or to be incurred pursuant to the Administrative Orders.

**Answer:**     Paragraph 56 asserts legal conclusions to which no response is required.

57.     In accordance with section 107(a) of CERCLA, 42 U.S.C. § 9607(a), International Paper is entitled to recover interest on the Kalamazoo River Superfund Site response costs it has paid and will pay in the future.

**Answer:**     Paragraph 57 asserts legal conclusions to which no response is required.

## SECOND CAUSE OF ACTION

### Claim for Contribution Against All Defendants under CERCLA Section 113

58.     International Paper realleges and incorporates the preceding paragraphs as if fully set forth herein.

**Answer:**     Weyerhaeuser incorporates by reference its answers to Paragraphs 1-57.

59.     CERCLA section 113(f), 42 U.S.C. § 9613(f), authorizes any person to seek contribution from any other person who is liable or potentially liable under CERCLA section 107(a), 42 U.S.C. § 9607(a).

**Answer:**     Paragraph 59 asserts legal conclusions to which no response is required.

60.     International Paper has paid and is obligated to pay costs that exceed International Paper's equitable share, if any, of such costs.  Insofar as any costs sought by International Paper are not recoverable claim under section 107(a)(4)(B) of CERCLA, those costs are recoverable under section 113(f)(1), 42 U.S.C. 9613(f)(1) based on an allocation among liable parties using such equitable factors as the Court deems appropriate pursuant to CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1).

**Answer:**     Paragraph 60 asserts legal conclusions to which no response is required.

61.     Pursuant to the standards of section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and in accordance with section 107(a) of CERCLA, 42 U.S.C. § 9607(a), International Paper is entitled to recover interest on the Kalamazoo River Superfund Site costs it has paid and will pay in the future in excess of its equitable share, if any.

**Answer:**     Paragraph 61 asserts legal conclusions to which no response is required.

## THIRD CAUSE OF ACTION

### Claim for Declaratory Judgment

62.     International Paper realleges and incorporates the preceding paragraphs as if fully set forth herein.

**Answer:**     Weyerhaeuser incorporates by reference its answers to Paragraphs 1-61.

63.     International Paper has and will continue to incur "response" costs within the meaning of CERCLA section 101(25), 42 U.S.C. § 9601(25) at the Kalamazoo River Superfund Site that are necessary and consistent with the National Contingency Plan.

**Answer:**     Paragraph 63 asserts legal conclusions to which no response is required.

64.     International Paper is entitled to a declaratory judgment as to defendants' liability for such future costs that International Paper incurs at the Site pursuant to CERCLA section 113(g)(1), 42 U.S.C. § 9613(g)(1) and section 113(g)(2), 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**Answer:**     Paragraph 64 asserts legal conclusions to which no response is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff International Paper prays for

a)  A judgment in favor of International Paper and against GP on International Paper's First Cause of Action;

b)  A judgment in favor of International Paper and against NCR on International Paper's First Cause of Action;

c)  A judgment in favor of International Paper and against Weyerhaeuser on International Paper's First Cause of Action;

d)  An order directing GP, NCR, and Weyerhaeuser to pay their equitable percentage of the past response costs that International Paper has incurred at the Site, plus interest, under CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), and CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1) on International Paper's Second Cause of Action;

e)   A declaratory judgment, and other appropriate prospective relief, directing GP, NCR, and Weyerhaeuser to pay their equitable percentage of all future response costs associated with the cleanup of the Site, under the Declaratory Judgment Act, 28 U.S.C. § 2201, CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1), CERCLA section 113(g)(2), and/or 42 U.S.C. § 9613(g)(2) on International Paper's Third Cause of Action; and

f)   Such other and further relief as the Court deems just and appropriate.

**Answer:**      The allegations set forth in the Prayer for Relief, sections (a) through (f), are not allegations of fact, and therefore no response is required.  Weyerhaeuser denies that International Paper is entitled to relief from Weyerhaeuser.


## SEPARATE AND AFFIRMATIVE DEFENSES

1.      Weyerhaeuser hereby incorporates by reference its answers to the allegations set forth in International Paper's Complaint.

2.      International Paper's allegations fail to state a claim upon which relief can be granted.

3.      The discharge, release, and/or disposal of hazardous substances at the Site, and any resulting harms, were caused by the acts or omissions of International Paper and/or other parties or entities unrelated to Weyerhaeuser, and Weyerhaeuser has no liability for such damages under CERCLA.

4.      International Paper's claims are barred in whole or in part insofar as International Paper seeks to recover costs that are not reasonable or necessary response costs or are otherwise not consistent with the National Contingency Plan.

5.      International Paper's claims are barred in whole or in part to the extent that International Paper seeks to recover costs and expenses other than response costs, as the term is defined in CERCLA.

6.      International Paper's claims are barred in whole or in part insofar as International Paper has failed to meet all conditions precedent to recovery.

7.      International Paper's claims are barred in whole or in part by the applicable statutes of limitations or waiver.

8.      International Paper's claims are barred in whole or in part by the doctrine of estoppel.

9.      International Paper's claims, to the extent they are equitable in nature, are barred in whole or in part by the doctrine of laches.

10.     International Paper's claims are barred by the doctrine of unclean hands.

11.     In all its actions with relation to the Site, if any, Weyerhaeuser exercised due care with respect to the hazardous substances concerned, taking into consideration the characteristics of such hazardous substances, in light of all the facts and circumstances, and took precautions against the foreseeable acts or omissions of any third parties and the consequences that could foreseeably result from such acts or omissions.

12.     Response costs may not be recovered to the extent that any releases by Weyerhaeuser were authorized by applicable permits.

13.     International Paper has failed to mitigate its damages, if any.

14.     To the extent Weyerhaeuser is held liable, its liability is divisible.

15.     To the extent Weyerhaeuser is held liable, it is liable only for its several share of liability.

16.     To the extent that Weyerhaeuser is held liable, the response costs that Weyerhaeuser and others have incurred and will incur, including in response to releases from the Plainwell Mill and the 12th Street Landfill, exceed its share of liability.

17.     Weyerhaeuser is not liable for any releases of hazardous substances, or any damages therefrom, in any area upstream of the facilities that Weyerhaeuser owned or operated.

18.     International Paper is a responsible party under CERCLA Section 107(a) and is therefore barred from bringing a claim for joint and several cost recovery under CERCLA Section 107(a).

19.     Weyerhaeuser's share of liability, if any, is de minimis, de micromis, or both.

20.     Weyerhaeuser reserves the right to assert additional affirmative defenses after it has conducted discovery.

## <u>COUNTERCLAIMS AND CROSSCLAIMS</u>

Weyerhaeuser, by and through its undersigned counsel, brings these Counterclaims against International Paper and Crossclaims against Georgia-Pacific Consumer Products LP, Fort James Corporation, Georgia-Pacific LLC (collectively, "Georgia-Pacific") and NCR Corporation.

1.     This case arises from the same transaction or occurrence as a prior case litigated in this Court: *Georgia-Pacific Consumer Products LP, et al. v. NCR Corporation, et al.*, Case Number 1:11-cv-00483-RJJ ("*GP v. NCR*").

2.     Weyerhaeuser brings this action to recover response costs and for other relief under the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et seq*. ("CERCLA"), also known as Superfund.

3.　　　Although this case is related to *GP v. NCR*, Weyerhaeuser brings this action under CERCLA to pursue cost-recovery and contribution claims for costs that Weyerhaeuser has incurred and will continue to incur responding to releases and threats of releases of hazardous substances at the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site ("Kalamazoo River Superfund Site" or "the Site") after the 2015 allocation-phase trial in *GP v. NCR*.

4.　　　Weyerhaeuser brings these claims now to ensure that they are filed within any applicable statute of limitations under CERCLA, to the extent the claims may not be deemed to be within the scope of the claim addressed in *GP v. NCR*.

## BACKGROUND

5.　　　The Site is contaminated with polychlorinated biphenyls, better known as PCBs, a hazardous substance. The primary PCB contaminant at issue at the Site is known as Aroclor 1242.

6.　　　PCBs were released into the Kalamazoo River by certain companies.

7.　　　PCBs were released into the Kalamazoo River because waste paper that was deinked and/or recycled by companies near the Kalamazoo River included PCB-laden "broke" and "trim." Such broke and trim were wastes that resulted from the manufacture of proprietary, PCB-coated "carbonless copy paper" ("CCP") pioneered by NCR. During this period, paper de-inking and recycling companies did not know that the CCP broke and trim contained PCBs.

8.　　　The Court concluded in *GP v. NCR* that NCR CCP is the primary source of the PCB-contaminated sediments that require remediation at the Site.

9.　　　If not for NCR's use of PCBs in its CCP, and if not for the contamination of the Kalamazoo River by PCB Aroclor 1242 attributable to NCR broke and trim, the Kalamazoo River would not have been listed as a Superfund site.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 9607 and 9613(b); 28 U.S.C. § 1331; and 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 9613(g)(2).

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 9613(b), because the events giving rise to the claims asserted in this Complaint are based on activities that took place in this District.

12.     Venue is also proper pursuant to 28 U.S.C. § 1391(c), as each Counterclaim- and Cross-Defendant is subject to personal jurisdiction in this District.

13.     This action arises out of the same transactions or occurrences and involves the same parties as *GP v. NCR* and is, thus, a case related to *GP v. NCR* under W.D. Mich. LCivR 3.3.1(d)(iii).

## PARTIES

### Counterclaim-Defendant

14.     International Paper Co. is the corporate successor to St. Regis Paper Company, an entity that disposed of PCBs into the Kalamazoo River and that later leased its polluting plant and equipment to a company that continued disposal practices that resulted in the release of PCBs into the Kalamazoo River Superfund Site.

15.     This Court concluded in *GP v. NCR* that International Paper is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site.

### Cross-Defendants

16.     Georgia-Pacific is the corporate successor to Kalamazoo-area facilities that deinked and recycled PCB-containing NCR broke and trim.

17.     Georgia-Pacific also owned and operated landfills at the Site, into which it placed dewatered paper residuals, which also contained PCBs.  Those landfills released PCBs into the Kalamazoo River.

18.     This Court concluded (and Georgia-Pacific conceded) in *GP v. NCR* that Georgia-Pacific is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site.

19.     NCR invented the PCB-containing CCP that caused the PCB contamination of the Kalamazoo River Superfund Site.  NCR arranged for the disposal of PCB-laden waste, including from its own CCP converting operations.  NCR also arranged for the disposal of PCB-laden broke and trim from its "contract coaters," companies that coated NCR's paper according to NCR's specifications, using an emulsion consigned to them by NCR.  NCR is also the corporate successor to at least two coaters—the Wisconsin-based Appleton Coated Paper Company ("ACPC"), and Combined Paper Mills, Inc. (also known as the "Combined Locks Mill")—that arranged for the disposal of PCB-laden broke and trim resulting from the coating of NCR CCP.  Waste paper from all these activities was recycled at facilities near the Kalamazoo River, with resulting releases of PCBs into the Kalamazoo River.

20.     This Court concluded in *GP v. NCR* that NCR is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site.  NCR has not funded or performed any work related to the investigation or cleanup of the Kalamazoo River Superfund Site.

**Counterclaim- and Cross-Plaintiff**

21.     Weyerhaeuser owned and operated a landfill which contained PCBs that were released into the Kalamazoo River.

22.     For purposes of the *GP v. NCR* litigation and this action, Weyerhaeuser concedes (1) that it is an owner and operator of a facility at the Site within the meaning of section 101 (20)(A) of CERCLA, 42 U.S.C. § 9601 (20)(A); and (2) that there has been a release or threatened release of PCBs, a hazardous substance, within the meaning of sections 101(14), (22) of CERCLA, 42 U.S.C. §§ 9601 (14), (22), from its facility to a portion of the Site.

23.     This Court concluded in *GP v. NCR* that Weyerhaeuser is a responsible party for Site-related contamination and is thus liable for a portion of the recoverable response costs incurred at the Site.  Weyerhaeuser has filed a cross-appeal of the Court's Judgment.

24.     Weyerhaeuser seeks to recover a portion of the response costs that Weyerhaeuser has incurred at the Site since 2015 and will continue to incur at the Site.

25.     Weyerhaeuser has incurred millions of dollars in response costs to investigate and clean up its former mill property, the 12th Street Landfill, and parts of Operable Unit ("OU") 5 adjacent to the mill property and landfill.

## WEYERHAEUSER'S COSTS

26.     Since this Court's allocation of response costs in *GP v. NCR*, Weyerhaeuser has incurred millions of dollars for cleanup activities at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300.  Weyerhaeuser has incurred these costs pursuant to and in compliance with United States Environmental Protection Agency Unilateral Administrative Order, Docket No. V-W-16-C-009, dated April 14, 2016.  Work that Weyerhaeuser is obligated to perform pursuant to the terms of the Administrative Order is ongoing, and Weyerhaeuser will incur additional costs pursuant to the Administrative Order.

27.     The Site cleanup is not complete.  EPA has not selected a final remedy for all of the Site, and the final Record of Decision for downstream areas of the Kalamazoo River is not expected until at least 2024.

## FIRST CAUSE OF ACTION

### Counterclaim and Crossclaim for Response Costs under CERCLA Section 107

28.     Weyerhaeuser realleges and incorporates the preceding paragraphs as if fully set forth herein.

29.     CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), authorizes the recovery of "necessary costs of response consistent with the national contingency plan."

30.     The Kalamazoo River Superfund Site is a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9).

31.     Weyerhaeuser is a "person" as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

32.     International Paper is a "person" as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

33.     Georgia-Pacific is a "person" as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

34.     NCR is a "person" as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

35.     There was an actual or threatened "release" at and from the Site above of "hazardous substances" within the meaning of CERCLA sections 101(14) and (22), 44 U.S.C. §§ 9601(14), (22).

36.     International Paper is a person that is or was an owner or operator of facilities referred to above from which there has been a release of hazardous substances within the meaning of CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

37.     Georgia-Pacific is or was an owner or operator of facilities referred to above from which there was been a release of hazardous substances within the meaning of CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

38.     NCR is a person that by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, at the Site in the form of PCB-containing NCR paper broke and trim, within the meaning of CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)(3).

39.     In connection with the releases of PCBs from the facilities located near the Kalamazoo River, and pursuant to the Administrative Order, Weyerhaeuser has incurred and will incur "response costs" within the meaning of CERCLA section 101 (25), 42 U.S.C. § 9601(25). These "response costs" were and will be necessary and consistent with the National Contingency Plan pursuant to CERCLA section 105(a), 42 U.S.C. § 9605(a).

40.     Counterclaim Defendant and Cross-Defendants are liable, pursuant to section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), to Weyerhaeuser for past and future Kalamazoo River Superfund Site response costs incurred or to be incurred pursuant to the Administrative Order.

41.     In accordance with section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Weyerhaeuser is entitled to recover interest on the Site response costs it has paid and will pay in the future.

## SECOND CAUSE OF ACTION

### Counterclaim and Crossclaim for Contribution under CERCLA Section 113

42.     Weyerhaeuser realleges and incorporates the preceding paragraphs as if fully set forth herein.

43.     CERCLA section 113(f), 42 U.S.C. § 9613(f), authorizes any person to seek contribution from any other person who is liable or potentially liable under CERCLA section 107(a), 42 U.S.C. § 9607(a).

44.     Weyerhaeuser has paid and is obligated to pay costs that exceed its equitable share, if any, of such costs.  Insofar as any costs sought by Weyerhaeuser are not recoverable under section 107(a)(4)(B) of CERCLA, those costs are recoverable under section 113(f)(1), 42 U.S.C. 9613(f)(1), based on an allocation among liable parties using such equitable factors as the Court deems appropriate pursuant to CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1).

45.     Pursuant to the standards of section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and in accordance with section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Weyerhaeuser is entitled to recover interest on the Site costs it has paid and will pay in the future in excess of its equitable share, if any.

### THIRD CAUSE OF ACTION

### Counterclaim and Crossclaim for Declaratory Judgment

46.     Weyerhaeuser realleges and incorporates the preceding paragraphs as if fully set forth herein.

47.     Weyerhaeuser has and will continue to incur "response" costs within the meaning of CERCLA section 101(25), 42 U.S.C. § 9601(25) at the Kalamazoo River Superfund Site that are necessary and consistent with the National Contingency Plan.

48.     Weyerhaeuser is entitled to a declaratory judgment as to the liability of International Paper, Georgia-Pacific, and NCR for such future costs that Weyerhaeuser incurs at

the Site pursuant to CERCLA section 113(g)(1), 42 U.S.C. § 9613(g)(1) and section 113(g)(2), 42

U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

WHEREFORE, Weyerhaeuser prays for

a)      A judgment in favor of Weyerhaeuser and against International Paper, NCR, and Georgia-Pacific on Weyerhaeuser's First Cause of Action;

b)      An order directing International Paper, Georgia-Pacific, and NCR to pay their equitable percentage of the past response costs that Weyerhaeuser has incurred at the Site, plus interest, under CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), and CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1) on Weyerhaeuser's Second Cause of Action;

c)      A declaratory judgment, and other appropriate prospective relief, directing International Paper, Georgia-Pacific, and NCR to pay their equitable percentage of all future response costs associated with the cleanup of the Site, under the Declaratory Judgment Act, 28 U.S.C. § 2201, CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1), CERCLA section 113(g)(2), and/or 42 U.S.C. § 9613(g)(2) on Weyerhaeuser's Third Cause of Action; and

d)      Such other and further relief as the Court deems just and appropriate.

DATED:  November 2, 2018                **WEYERHAEUSER COMPANY**


By:  /s/ Scott M. Watson


**WARNER NORCROSS + JUDD** LLP
Douglas A. Dozeman, MI Bar No. P35871
DDozeman@wnj.com
Scott M. Watson, MI Bar No. P70185
SWatson@wnj.com
900 Fifth Third Center
111 Lyon St. NW
Grand Rapids, MI 49503
Telephone:  616.752.2000
Facsimile:  616.752.2500

Attorneys for Weyerhaeuser Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2018, I electronically filed the foregoing using the ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via the Court's electronic system.


By:     /s/ Scott M. Watson