IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY, ) | |
| ) | Civil Action No.: 1:18-cv-1229 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| GEORGIA-PACIFIC CONSUMER ) | |
| PRODUCTS LP, FORT JAMES CORPORATION, ) | |
| GEORGIA-PACIFIC LLC, NCR CORPORATION, ) | |
| and WEYERHAEUSER COMPANY, ) | |
| ) | |
| Defendants. ) | |

**GEORGIA-PACIFIC CONSUMER PRODUCTS LP,
FORT JAMES CORPORATION, AND GEORGIA-PACIFIC LLC'S ANSWER**

Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC (collectively, "Georgia-Pacific"), by and through their undersigned counsel, file this answer to the complaint of International Paper Company ("International Paper"). Georgia-Pacific denies all allegations in the Complaint not admitted herein.

## INTRODUCTION

1. This case arises from the same transaction or occurrence as a prior case litigated in this Court: *Georgia-Pacific Consumer Products LP, et al. v. NCR Corporation, et al.*, Case Number 1:11-cv-00483-RJJ ("*GP v. NCR*").

**Answer:** Georgia-Pacific admits that International Paper purports that this action arises from the same transaction or occurrence as a prior litigated case, *Georgia-Pacific Consumer Products LP, et al. v. NCR Corporation, et al.*, Case Number 1:11-cv-00483-RJJ ("*GP v. NCR*").

2. International Paper brings this action to recover costs of response and for other relief under the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et seq*. ("CERCLA"), also known as Superfund.

**Answer:** Georgia-Pacific admits that International Paper seeks to recover in this lawsuit what it characterizes as costs of response and other relief under the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et seq*. ("CERCLA"), also known as Superfund. Georgia-Pacific otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 2.

3. Although this case is related to *GP v. NCR*, International Paper brings this action under CERCLA to pursue cost-recovery and contribution claims for costs that International Paper incurred and will continue to incur responding to releases and threats of releases of hazardous substances at the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site ("Kalamazoo River Superfund Site" or "the Site") *after* the 2015 allocation-phase trial in *GP v. NCR*.

**Answer:** Georgia-Pacific admits that International Paper purports to bring this lawsuit under CERCLA to pursue cost-recovery and contribution claims for costs that International Paper purports that it incurred and will continue to incur responding to releases and threats of releases of hazardous substances at the Allied Paper Inc./Portage Creek/ Kalamazoo River Superfund Site ("Kalamazoo River Superfund Site" or "the Site") after the 2015 allocation-phase trial in *GP v. NCR*. Georgia-Pacific otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3.

4. International Paper brings these claims now to ensure that they are filed within any applicable statute of limitations under CERCLA, to the extent the claims may not be deemed to be within the scope of the claim addressed in *GP v. NCR*.

**Answer:** Georgia-Pacific lacks knowledge or information sufficient to form a belief about the truth of International Paper's reasons for filing this lawsuit. Georgia-Pacific denies any remaining allegations in Paragraph 4.

## BACKGROUND

5. The Site is contaminated with polychlorinated biphenyls, better known as PCBs. PCBs are a hazardous substance. The primary PCB contaminant at issue at the Kalamazoo River Superfund Site is known as Aroclor 1242.

**Answer:** Admitted.

6. Through at least 1971, PCBs were released into the Kalamazoo River through the discharge and disposal of PCB-contaminated solids and paper residuals by certain paper de-inking and recycling companies.

**Answer:** Admitted.

7. PCBs were released into the Kalamazoo River because waste paper that was deinked and/or recycled by companies near the Kalamazoo River included PCB-laden "broke" and "trim." Such broke and trim were wastes that resulted from the manufacture of proprietary, PCB-coated "carbonless copy paper" ("CCP") pioneered by Defendant NCR Corporation. During this period, paper de-inking and recycling companies did not know that the CCP broke and trim contained PCBs.

**Answer:** Admitted.

8. Contamination from the PCB-laden broke and trim has made large segments of the Kalamazoo River an "NCR river." As the Court concluded in *GP v. NCR*, NCR CCP is the primary source of the PCB-contaminated sediments that require remediation at the Kalamazoo River Superfund Site.

**Answer:** Admitted.

9. If not for NCR's use of PCBs in its CCP, and if not for the contamination of the Kalamazoo River by PCB Aroclor 1242 attributable to NCR broke and trim, the Kalamazoo River would not have been listed as a Superfund site.

**Answer:** Admitted.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 9607 and 9613(b), providing jurisdiction over controversies arising under CERCLA; 28 U.S.C. § 1331 providing jurisdiction over federal questions; and 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 9613(g)(2), providing jurisdiction over declaratory judgment actions.

**Answer:** Admitted.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 9613(b), because the events giving rise to the claims asserted in this Complaint are based on paper processing and

other related activities that took place in this District and resulted in the release of PCBs into portions of the Kalamazoo River located in this District.

**Answer:** Admitted.

12. Venue is also proper pursuant to 28 U.S.C. § 1391(c), as each Defendant is subject to personal jurisdiction in this District.

**Answer:** Admitted.

13. Pursuant to 42 U.S.C. § 9601(l), International Paper will provide a copy of this Complaint to the Attorney General of the United States and to the Administrator of the United States Environmental Protection Agency.

**Answer:** Paragraph 13 does not allege facts regarding Georgia-Pacific and therefore no response from Georgia-Pacific is required.

## PARTIES

### The Defendants

14. GP is the corporate successor to Kalamazoo-area facilities, including the Kalamazoo Paper Company mill, that deinked and recycled PCB-containing NCR broke and trim, which resulted in the discharge of large volumes of PCBs into the Kalamazoo River.

**Answer:** Georgia-Pacific admits it is the successor to companies that formerly operated the Kalamazoo Paper Company mill, that the mill deinked and recycled PCB-containing NCR broke and trim at times, and that its deinking and recycling of PCB-containing NCR broke and trim resulted in the discharge of PCBs within portions of the Site. Georgia-Pacific denies the remaining allegations in Paragraph 14.

15. GP also owned and operated landfills at the Site, into which it placed dewatered paper residuals, which also contained PCBs. Those landfills released PCBs into the Kalamazoo River.

**Answer:** Georgia-Pacific admits that it is the successor to companies that owned and operated a landfill within the Site in which dewatered paper residuals containing PCBs were placed at times. Georgia-Pacific further admits some PCBs from that landfill migrated into the Kalamazoo River at times. Georgia-Pacific denies the remaining allegations in Paragraph 15.

16. This Court concluded (and GP conceded) in *GP v. NCR* that GP is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site.

**Answer:** Georgia-Pacific admits that it is a responsible party but denies that it admitted or is otherwise liable or responsible for Site-wide contamination or for response costs incurred anywhere at the Site.

17. NCR invented the PCB-containing CCP that has caused the PCB contamination of the Kalamazoo River Superfund Site. NCR arranged for the disposal of PCB-laden waste, including from its own CCP converting operations. NCR also arranged for the disposal of PCB-laden broke and trim from its "contract coaters," companies that coated NCR's paper according to NCR's specifications, using an emulsion consigned to them by NCR. NCR is also the corporate successor to at least two coaters—the Wisconsin-based Appleton Coated Paper Company ("ACPC"), and Combined Paper Mills, Inc. (also known as the "Combined Locks Mill")—that arranged for the disposal of PCB-laden broke and trim resulting from the coating of NCR CCP. Waste paper from all these activities was recycled at facilities near the Kalamazoo River, with resulting releases of PCBs into the Kalamazoo River.

**Answer:** Admitted.

18. This Court concluded in *GP v. NCR* that NCR is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site. On information and belief, NCR has not funded or performed any work related to the cleanup of the Kalamazoo River Superfund Site.

**Answer:** Admitted.

19. Weyerhaeuser and its predecessor Hamilton Paper Company (collectively, "Weyerhaeuser") disposed of PCBs into the Kalamazoo River, owned and operated a landfill which contained PCBs that were released into the Kalamazoo River, and otherwise engaged in continued disposal practices that resulted in the release of PCBs into the Kalamazoo River Superfund Site.

**Answer:** Admitted.

20. This Court concluded (and Weyerhaeuser stipulated) in *GP v. NCR* that Weyerhaeuser is a responsible party for Site-related contamination and is thus liable for response costs incurred at the Site.

**Answer:** Georgia-Pacific admits that Weyerhaeuser is a responsible party but denies that Weyerhaeuser admitted or is otherwise liable or responsible for Site-wide contamination or for response costs incurred anywhere at the Site..

**Plaintiff International Paper**

21.     International Paper is the corporate successor to St. Regis Paper Company ("St. Regis").  For a period, St. Regis owned and operated the Bryant Mill, a mill that was located in what is now part of the Site.

**Answer:**     Admitted.

22.     St. Regis purchased the Bryant Mill in 1946 and operated the Bryant Mill until June 30, 1956.

**Answer:**     Admitted.

23.     In 1956, St. Regis entered into a transaction with the Allied Paper Division of the Thor Corporation ("Allied").  Through that transaction, Allied acquired the business of the Bryant Mill.  On July 1, 1956, Allied became the Bryant Mill's operator and, economically and for purposes of 42 U.S.C. § 9601(2)(E)(i), its owner even though Allied did not hold record title to certain of the mill real property ("Mill Property") until 1966, when Allied exercised its option to acquire title to the Mill Property.

**Answer:**     Denied.

24.     Between the 1956 transaction and Allied's exercise of its option in 1966, St. Regis continued to hold title to the Mill Property primarily to protect its security interest in the mill.

**Answer:**     Denied.

25.     After Allied exercised its option and record title to the Mill Property was transferred to Allied in 1966, St. Regis had no connection to the Bryant Mill.

**Answer:**     Denied.

26.     In 1984, St. Regis was acquired by Champion International Corporation ("Champion").  St. Regis was merged into Champion in 1985.

**Answer:**     Admitted.

27.     In June 2000, International Paper acquired Champion.  On December 31, 2000, Champion was merged into International Paper.

**Answer:**     Admitted.

28.     In *GP v. NCR*, this Court determined that International Paper is liable for Site-related response costs as the successor to St. Regis, and that St. Regis remained an owner of the Bryant Mill until Allied exercised its option to purchase title to the mill in 1966.  International Paper has appealed the Court's Judgment.  Regardless of whether that appeal succeeds,

International Paper intends to pursue its claims, asserted in this action, for response costs that International Paper has incurred at the Site and is continuing to incur.

**Answer:** Georgia-Pacific admits the first two sentences in Paragraph 28. Georgia-Pacific lacks knowledge or information sufficient to form a belief about the truth of the third sentence.

### PRIOR LITIGATION, INCLUDING *GP v. NCR*

29. The Site has been the subject of prior litigation, including *Kalamazoo River Study Group v. Rockwell International,* Case Number 1:95-cv-838 ("the KRSG Litigation") and *GP v. NCR*.

**Answer:** Admitted.

30. The plaintiff in the KRSG Litigation was the Kalamazoo River Study Group ("KRSG"), an unincorporated association that included GP's predecessors Georgia-Pacific Corporation and James River Company, and Weyerhaeuser's predecessor Simpson Plainwell Paper Company.

**Answer:** Admitted.

31. Those members of the KRSG, along with a successor of Allied, pursued CERCLA claims through the KRSG against various companies that had operated facilities in and around the Site. Neither the KRSG nor any of its members pursued any claims against St. Regis, Champion, or International Paper during the KRSG Litigation.

**Answer:** Admitted.

32. Over six years after the KRSG Litigation ended, GP filed *GP v. NCR* in which GP asserted CERCLA claims related to the Site against International Paper, NCR, and Weyerhaeuser.

**Answer:** Admitted.

33. Chief Judge Robert J. Jonker presided over *GP v. NCR*, including two trials: a trial addressing the parties' liability, which was held in February 2013 ("Liability Phase Trial"), and a trial addressing the allocation of responsibility for response costs at the Site, which was held from September through December 2015 ("Allocation Trial").

**Answer:** Admitted.

34. After the Liability Phase Trial, this Court found all Defendants named in this action and International Paper to be responsible parties under CERCLA.

**Answer:** Denied as to Georgia-Pacific; admitted as to International Paper and the other Defendants.

35. After the Allocation Trial, this Court allocated GP's recoverable response costs incurred through August 31, 2014. The Court held that GP was responsible for 40% of those costs. The Court allocated the remaining 60% of GP's recoverable response costs as follows: NCR–40%; IP–15%; GP[sic]–5%. Subsequently, a judgment in *GP v. NCR* was entered on June 19, 2018.

**Answer:** Admitted, with the clarification the Court allocated 5% to Weyerhaeuser, not Georgia-Pacific.

36. The Court's Judgment in *GP v. NCR* is currently on appeal to the U.S. Court of Appeals for the Sixth Circuit.

**Answer:** Admitted.

### RELATED-CASE ALLEGATIONS

37. This case involves the same parties as *GP v. NCR*.

**Answer:** Admitted.

38. This case addresses response costs incurred at the same Site as in *GP v. NCR*.

**Answer:** Georgia-Pacific admits that International Paper claims the response costs it seeks to recover in this action were incurred in connection with the same Site that was the subject of *GP v. NCR*. Georgia-Pacific otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 38.

39. This case addresses response costs resulting from the same contaminant of concern as alleged in *GP v. NCR*, and from the same contamination-causing activities as alleged in *GP v. NCR*.

**Answer:** Georgia-Pacific admits that International Paper claims the response costs it seeks to recover in this action were incurred in connection with the same Site that was the subject of *GP v. NCR*. Georgia-Pacific otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 39.

40. This case thus arises out of the same transaction or occurrence as *GP v. NCR* and is thus a related case to *GP v. NCR* under W.D. Mich. LCivR 3.3.1(d)(iii) and a cognate case to *GP v. NCR* under W.D. Mich. LCivR 3.3.2(c).

**Answer:** Admitted.

### INTERNATIONAL PAPER'S COSTS

41. Since the *GP v. NCR* Allocation Trial concluded, International Paper has incurred millions of dollars in NCP-compliant response costs for cleanup activities at the Site. International Paper has incurred these costs pursuant to U.S. Environmental Protection Agency Unilateral Administrative Order, Docket No. V-W-16-C-009, dated April 14, 2016 and U.S. Environmental Protection Agency Unilateral Administrative Order, Docket No. V-W-17-C-002, dated December 16, 2016 (collectively, the "Administrative Orders"). Work that International Paper is obligated to perform pursuant to the terms of the Administrative Orders is ongoing and International Paper is incurring and in the future will incur additional costs pursuant to the Administrative Orders.

**Answer:** Georgia-Pacific is without knowledge or information sufficient to form a belief regarding the truth of the allegations set forth in Paragraph 41.

42. The cleanup of the Site is far from complete as the Administrative Orders only address certain of the work required in connection with the Site.

**Answer:** Admitted.

43. On appeal, International Paper contests (among other things) the Court's finding in *GP v. NCR* that International Paper is a responsible party with regard to the Site. Regardless of the final disposition of that appeal, International Paper intends to pursue this action.

**Answer:** Georgia-Pacific admits the allegations in the first sentence of Paragraph 43. Georgia-Pacific lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 43.

### FIRST CAUSE OF ACTION

**Claim for Response Costs Against All Defendants under CERCLA Section 107**

44. International Paper realleges and incorporates the preceding paragraphs as if fully set forth herein.

**Answer:** Georgia-Pacific incorporates by reference its answers to Paragraphs 1–43.

45. CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), authorizes the recovery of "necessary costs of response consistent with the national contingency plan."

**Answer:** Admitted.

46. The Kalamazoo River Superfund Site and/or each of the facilities owned and/or operated by GP and Weyerhaeuser or their predecessors within the Site is a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9).

**Answer:** Admitted.

47. International Paper is a ''person'' as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:** Admitted.

48. GP is a ''person'' as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:** Admitted.

49. NCR is a "person" as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:** Admitted.

50. Weyerhaeuser is a ''person'' as defined by CERCLA section 101(21), 42 U.S.C. § 9601(21).

**Answer:** Admitted.

51. There was an actual or threatened "release" at and from the facilities referenced above of "hazardous substances" within the meaning of CERCLA sections 101(14) and (22), 44 U.S.C. §§ 9601(14), (22).

**Answer:** Admitted, assuming the facilities are those referenced in Paragraph 46.

52. GP is a person that is or was an owner or operator of facilities referred to above from which there has been a release of hazardous substances within the meaning of CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

**Answer:** Georgia-Pacific admits that it is a successor to companies that owned or operated one or more facilities in the Site at which there was a release of PCBs. Georgia-Pacific denies the remaining allegations in Paragraph 52.

53. Weyerhaeuser is or was an owner or operator of facilities referred to above from which there was been a release of hazardous substances within the meaning of CERCLA section 107(a)(2), 42 U.S.C. § 9607(a)(2).

**Answer:** Admitted.

54. NCR is a person that by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, at the Site in the form of PCB-containing NCR paper broke and trim, within the meaning of CERCLA section 107(a)(3), 42 U.S.C. § 9607(a)(3).

**Answer:** Admitted.

55. In connection with the releases of PCBs from the facilities located near the Kalamazoo River, and pursuant to the Administrative Orders, International Paper has incurred and will incur "response costs" within the meaning of CERCLA section 101 (25), 42 U.S.C. § 9601(25). These "response costs" were, and will be, necessary and consistent with the National Contingency Plan pursuant to CERCLA section 105(a), 42 U.S.C. § 9605(a).

**Answer:** Georgia-Pacific lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55.

56. Defendants are liable, pursuant to section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), to International Paper for past and future Kalamazoo River Superfund Site response costs incurred or to be incurred pursuant to the Administrative Orders.

**Answer:** Paragraph 56 asserts legal conclusions to which no response is required. To the extent any response is required, Georgia-Pacific denies Paragraph 56.

57. In accordance with section 107(a) of CERCLA, 42 U.S.C. § 9607(a), International Paper is entitled to recover interest on the Kalamazoo River Superfund Site response costs it has paid and will pay in the future.

**Answer:** Paragraph 57 asserts legal conclusions to which no response is required. To the extent any response is required, Georgia-Pacific denies Paragraph 57.

## SECOND CAUSE OF ACTION

### Claim for Contribution Against All Defendants under CERCLA Section 113

58. International Paper realleges and incorporates the preceding paragraphs as if fully set forth herein.

**Answer:** Georgia-Pacific incorporates by reference its answers to Paragraphs 1–57.

59. CERCLA section 113(f), 42 U.S.C. § 9613(f), authorizes any person to seek contribution from any other person who is liable or potentially liable under CERCLA section 107(a), 42 U.S.C. § 9607(a).

**Answer:** Admitted.

60. International Paper has paid and is obligated to pay costs that exceed International Paper's equitable share, if any, of such costs. Insofar as any costs sought by International Paper are not recoverable claim under section 107(a)(4)(B) of CERCLA, those costs are recoverable under section 113(f)(1), 42 U.S.C. 9613(f)(1) based on an allocation among liable parties using such equitable factors as the Court deems appropriate pursuant to CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1).

**Answer:** Paragraph 60 asserts legal conclusions to which no response is required.

To the extent any response is required, Georgia-Pacific denies Paragraph 60.

61. Pursuant to the standards of section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and in accordance with section 107(a) of CERCLA, 42 U.S.C. § 9607(a), International Paper is entitled to recover interest on the Kalamazoo River Superfund Site costs it has paid and will pay in the future in excess of its equitable share, if any.

**Answer:** Paragraph 61 asserts legal conclusions to which no response is required.

To the extent any response is required, Georgia-Pacific denies Paragraph 61.

## THIRD CAUSE OF ACTION

### Claim for Declaratory Judgment

62. International Paper realleges and incorporates the preceding paragraphs as if fully set forth herein.

**Answer:** Georgia-Pacific incorporates by reference its answers to Paragraphs 1–61.

63. International Paper has and will continue to incur "response" costs within the meaning of CERCLA section 101(25), 42 U.S.C. § 9601(25) at the Kalamazoo River Superfund Site that are necessary and consistent with the National Contingency Plan.

**Answer:** Paragraph 63 asserts legal conclusions to which no response is required.

To the extent any response is required, Georgia-Pacific denies Paragraph 63.

64. International Paper is entitled to a declaratory judgment as to defendants' liability for such future costs that International Paper incurs at the Site pursuant to CERCLA section 113(g)(1), 42 U.S.C. § 9613(g)(1) and section 113(g)(2), 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**Answer:** Paragraph 64 asserts legal conclusions to which no response is required. To the extent any response is required, Georgia-Pacific denies Paragraph 64.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff International Paper prays for

    a)  A judgment in favor of International Paper and against GP on International Paper's First Cause of Action;

    b)  A judgment in favor of International Paper and against NCR on International Paper's First Cause of Action;

    c)  A judgment in favor of International Paper and against Weyerhaeuser on International Paper's First Cause of Action;

    d)  An order directing GP, NCR, and Weyerhaeuser to pay their equitable percentage of the past response costs that International Paper has incurred at the Site, plus interest, under CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), and CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1) on International Paper's Second Cause of Action;

    e)  A declaratory judgment, and other appropriate prospective relief, directing GP, NCR, and Weyerhaeuser to pay their equitable percentage of all future response costs associated with the cleanup of the Site, under the Declaratory Judgment Act, 28 U.S.C. § 2201, CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1), CERCLA section 113(g)(2), and/or 42 U.S.C. § 9613(g)(2) on International Paper's Third Cause of Action; and

    f)  Such other and further relief as the Court deems just and appropriate.

**Answer:** The allegations set forth in the Prayer for Relief, sections (a) through (f), are not allegations of fact, and therefore no response is required. Georgia-Pacific denies that International Paper is entitled to any relief from Georgia-Pacific, including the relief requested.

## SEPARATE AND AFFIRMATIVE DEFENSES

1. Georgia-Pacific hereby incorporates by reference its answers to the allegations set forth in International Paper's Complaint.

2. The discharge, release, and/or disposal of hazardous substances at the Site, and any resulting harms, were caused by the acts or omissions of International Paper and/or other parties or entities unrelated to Georgia-Pacific, and Georgia-Pacific has no liability for such damages or response costs under CERCLA.

3. International Paper's claims are barred in whole or in part insofar as International Paper seeks to recover costs that are not reasonable or necessary response costs or are otherwise not consistent with the National Contingency Plan.

4. International Paper's claims are barred in whole or in part to the extent that International Paper seeks to recover costs and expenses other than response costs, as the term is defined in CERCLA.

5. International Paper's claims are barred in whole or in part insofar as International Paper has failed to meet all conditions precedent to recovery.

6. International Paper's claims are barred in whole or in part by the applicable statutes of limitations or waiver.

7. International Paper's claims are barred in whole or in part by the doctrine of estoppel.

8. International Paper's claims, to the extent they are equitable in nature, are barred in whole or in part by the doctrine of laches.

9. International Paper's claims are barred by the doctrine of unclean hands.

10. In all its actions with relation to the Site, if any, Georgia-Pacific exercised due care with respect to the hazardous substances concerned, taking into consideration the

characteristics of such hazardous substances, in light of all the facts and circumstances, and took precautions against the foreseeable acts or omissions of any third parties and the consequences that could foreseeably result from such acts or omissions.

11. Response costs may not be recovered to the extent that any releases by Georgia-Pacific were authorized by applicable permits.

12. International Paper has failed to mitigate its damages, if any.

13. To the extent Georgia-Pacific is held liable, its liability is divisible.

14. To the extent Georgia-Pacific is held liable, it is liable only for its several share of liability.

15. To the extent that Georgia-Pacific is held liable, the response costs that Georgia-Pacific has incurred and will incur exceed its share of liability.

16. Georgia-Pacific is not liable for any releases of hazardous substances, or any damages therefrom, in any area upstream of the facilities that it owned or operated.

17. International Paper is a responsible party under CERCLA Section 107(a) and is therefore barred from bringing a claim for joint and several cost recovery under CERCLA Section 107(a).

18. International Paper's claims are barred in whole or in part by res judicata and/or collateral estoppel.

19. Georgia-Pacific reserves the right to assert additional affirmative defenses after it has conducted discovery.

**GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC**

By:  /s/ Michael R. Shebelskie

Peter A. Smit
Adam J. Brody
VARNUM LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000

Michael R. Shebelskie
Douglas M. Garrou
George P. Sibley, III
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200

Jan M. Conlin
CIRESI CONLIN LLP
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
(612) 361-8202

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 20, 2018, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing by operation of the Court's electronic systems.  Parties may access this filing via that Court's electronic system.

            By: /s/ Michael R. Shebelskie